COMMONWEALTH *vs.* EDWARD W. SPOFFORD.

Hampshire.   November 6, 1961, January 5, 1962. — March 1, 1962.

Present: WILKINS, C.J., WILLIAMS, WHITTEMORE, CUTTER, & SPIEGEL, JJ.

*Constitutional Law,* Search and seizure, Due process of law.   *Federal Law.* *Evidence,* Competency, Illegally seized material.   *Search and Seizure.*

Material seized by police officers without a search warrant, and not as an incident of a lawful arrest, in an apartment entered by them in the absence of its occupant was illegally seized in violation of the Fourth Amendment to the Federal Constitution.   [705–706]

The decision in *Mapp* v. *Ohio,* 367 U. S. 643, that evidence obtained by searches and seizures in violation of the Federal Constitution is inadmissible in a State court, governed the disposition by this court of a criminal case pending before it after such decision although the case had been tried in the trial court before such decision.   [706–707]

Where police officers illegally and in violation of the Fourth Amendment to the Federal Constitution seized certain material in an apartment, whose occupant then accompanied them to a police station at which, not under arrest but without counsel, he was questioned by officers about the material and in the course of the questioning said that he had more

similar material, whereupon he returned to the apartment with officers and there delivered the additional material to them, all without threats, duress, coercion, or promises by the officers, the additional material as well as the material originally seized was, by reason of the decision in *Mapp* v. *Ohio,* 367 U. S. 643, inadmissible in a criminal case against the occupant based on his possession of the material. [707–708]

COMPLAINT, received and sworn to in the District Court of Hampshire on September 3, 1960.

Upon appeal to the Superior Court the case was heard by *Taveira, J.,* without jury.

*Harold Katz,* for the defendant.

*Edward J. McCormack, Jr.,* Attorney General, *Leo Sontag,* Assistant Attorney General, *Sanford Keedy,* District Attorney, *Oscar Grife,* Assistant District Attorney, *& Joseph A. Laurano,* Assistant District Attorney, for the Commonwealth, submitted briefs.

WILKINS, C.J.  The defendant was found guilty in the District Court of Hampshire upon a complaint charging that in Northampton on September 2, 1960, he "unlawfully did have in his possession certain obscene, indecent and impure prints, pictures, figures, images and other things for the purpose of exhibition." G. L. c. 272, § 28A (as amended through St. 1959, c. 492, § 2).  From this finding he appealed to the Superior Court, where on October 13, 1960, he was found guilty by a judge sitting without jury.  On November 1, 1960, within the appeal period of twenty days, the defendant filed, and the judge allowed, his motion that the trial be made subject to the provisions of G. L. c. 278, §§ 33A–33G, inclusive, as amended.  See *Commonwealth* v. *Silvia, ante,* 130, 132–133.  Cf. *Commonwealth* v. *Dorius, ante,* 533, 535–536.  On the same day he filed his claim of appeal.

What we have to decide is the admissibility in evidence of allegedly pornographic material, some of which the Commonwealth admits, and all of which the defendant contends, was obtained as a result of unreasonable search and seizure. Stated otherwise, we are asked to decide the effect of *Mapp* v. *Ohio,* 367 U. S. 643, upon the nonexclusionary rule (Cf.

*Weeks* v. *United States,* 232 U. S. 383) as exemplified in *Commonwealth* v. *Dana,* 2 Met. 329, 337–338, and *Commonwealth* v. *Wilkins,* 243 Mass. 356. The following is summarized from the testimony in the Superior Court, where only government witnesses testified.

The defendant resided in an apartment building at 82 Green Street, Northampton. On September 2, 1960, two city police officers were instructed by a sergeant of the State police to go to the defendant's building and to ask him to come to the police station for a talk. An unknown woman occupant admitted them to the building. Finding the defendant's door open, they entered the apartment without a search warrant, took some envelopes from a closet shelf, and were examining the contents when the defendant arrived. He acknowledged ownership, and at the officers' invitation accompanied them to the police station.

There the defendant was interrogated about the seized material, which consisted, for the most part, of photographs of nude, or nearly nude, men. He was not under arrest. During the interrogation the material was on a desk in front of him, and much of it was shown to him, item by item. He admitted having shown the material "4 times or so," without specifying any particular items. In response to questioning, the defendant said that he had more, and with another officer and a postal inspector returned to the apartment where he delivered to them additional similar items. In the view we take of the case, the precise language of the conversation which led to the return to the apartment is not important.

The Commonwealth rightly concedes that the first lot of material seized without a search warrant and not incident to a valid arrest (*United States* v. *Rabinowitz,* 339 U. S. 56) was illegal. There was no compliance with G. L. c. 276, § 1 (as amended through St. 1947, c. 93), our statute relating to issuing search warrants. See especially cl. Eighth. There was a violation of art. 14 of the Declaration of Rights (see *Fisher* v. *McGirr,* 1 Gray, 1, 28–31) as well as of the Fourth Amendment to the Constitution of the United

States. *Wolf* v. *Colorado,* 338 U. S. 25, 27–28 (not over-ruled on this point). *Elkins* v. *United States,* 364 U. S. 206, 213.

Under *Commonwealth* v. *Wilkins,* 243 Mass. 356, decided in 1923, and earlier cases cited at p. 359, the illegally seized material could be admitted in evidence. The exact question is whether the present case, which was tried in the Superior Court on October 13, 1960, and in which there was a claim of appeal on November 1, 1960, is subject to *Mapp* v. *Ohio,* 367 U. S. 643, decided on June 19, 1961. In that case five justices (with a qualification in its reasoning by one of them)[1] held that all evidence obtained by searches and seizures in violation of the Federal Constitution is inadmissible in a State court, and on this point (pp. 654–655) overruled *Wolf* v. *Colorado,* 338 U. S. 25, which had been decided as recently as 1949. The ground of the *Mapp* majority opinion is that the exclusionary rule of *Weeks* v. *United States,* 232 U. S. 383, is "an essential part" of the Fourth Amendment and as such is enforceable against the States under the due process clause in the Fourteenth Amendment (pp. 655–656). See *Elkins* v. *United States,* 364 U. S. 206, 213. This complete reversal of so recent a ruling necessarily affecting many State court convictions has led to some discussion whether the *Mapp* ruling should be given only prospective operation.[2] Indeed, at least one court has so held.[3] But the Supreme Court of the United States did not limit *Griffin* v. *Illinois,* 351 U. S. 12, to prospective operation, as had been suggested in the concurring

[1] The majority opinion by Clark, J., was joined in by Warren, C.J., Black, Douglas and Brennan, JJ. Black, J., and Douglas, J., filed separate concurring opinions, the former (pp. 661–666) not fully subscribing to the reasoning of the majority. See dissenting opinion at page 685. Stewart, J., concurred (p. 672) on a ground unrelated to *Wolf* v. *Colorado,* 338 U. S. 25. The dissenting opinion was by Harlan, J., in which Frankfurter and Whittaker, JJ., joined.

[2] See, for example, Allen, "Federalism and the Fourth Amendment: A Requiem for Wolf," 1961 Sup. Ct. Rev. 1, 42–44, which upholds the negative view.

[3] *People* v. *Figueroa,* 220 N. Y. S. 2d 131 (King's County) (after conviction; no appeal taken). We cannot agree that the use of the word "today" in the majority opinion (pp. 654, 656) has that effect.

opinion of Frankfurter, J. (pp. 25–26).   See *Eskridge* v. *Washington State Bd. of Prison Terms & Paroles,* 357 U. S. 214, which in 1958 applied the *Griffin* rule to a conviction occurring in 1935.   We are here concerned with retroactive operation only in a limited sense, as the appeal is before us in regular course for decision on the law as it presently stands.[1]

We observe nothing in the *Mapp* majority opinion which indicates an intent that it be confined to prospective operation, assuming such a position could be soundly taken.   The result must be that the majority opinion in the *Mapp* case, which stands today as the ruling of the court, applies to the present case even though it was tried before the enunciation of that ruling and patently at a time when the trial judge had no choice but to rule as he did.

The Commonwealth, however, contends that the second lot of material was obtained at the invitation of the defendant; that as to it there was no search and seizure at all; and that there was no conduct violative of constitutional rights. See, for example, *United States* v. *Mitchell,* 322 U. S. 65, 69–70; *Commonwealth* v. *Tucker,* 189 Mass. 457, 469–470. So it is argued that the inadmissible evidence of the first lot was only cumulative, and that the conviction should be upheld upon the basis of the second lot.   See *Commonwealth* v. *Sazama,* 339 Mass. 154, 159.

We are unable to accept this argument.   The *Mapp* case (p. 655) seems to foreclose any State fashioning the incidents of the exclusionary rule within the bounds of due process.   We, accordingly, look to Federal law.   See "The Supreme Court, 1960 Term."   75 Harv. L. Rev. 40, 156–158.   When the defendant went to the police station in the company of officers and was examined by still other officers on the basis of the illegally obtained material, he was in no environment to make a free choice, even where the record

---

[1] See *People* v. *Loria,* 10 N. Y. 2d 368; *People* v. *Ryan,* 14 App. Div. 2d (N. Y.) 926; *People* v. *Piazza,* 15 App. Div. 2d (N. Y.) 503, 504.   In an analogous situation in California the adoption of the exclusionary rule by judicial decision (*People* v. *Cahan,* 44 Cal. 2d 434) was given limited retroactive effect.   *People* v. *Kitchens,* 46 Cal. 2d 260.

is barren of evidence of threats, duress, coercion, or promises by the police officers. Although not denied counsel, he nevertheless had none. The police questioning, including that as to the existence of other photographs and similar material, received impetus from the improperly acquired material. The defendant's purported consent and the second lot were an offshoot of the original unreasonable search and seizure. Its acquisition was branded with the initial taint. *Silverthorne Lumber Co.* v. *United States,* 251 U. S. 385, 391–392. *Takahashi* v. *United States,* 143 F. 2d 118, 122 (9th Cir.). *United States* v. *Arrington,* 215 F. 2d 630, 635–636 (7th Cir.). *United States* v. *Pollack,* 64 F. Supp. 554, 558 (D. N. J.). *United States* v. *Reckis,* 119 F. Supp. 687, 690–691 (D. Mass.). *United States* v. *Watson,* 189 F. Supp. 776 (S. D. Cal.). See *Somer* v. *United States,* 138 F. 2d 790, 791–792 (2d Cir.); *Hobson* v. *United States,* 226 F. 2d 890, 893–894 (8th Cir.); *McGinnis* v. *United States,* 227 F. 2d 598, 603–604 (1st Cir.); *Hair* v. *United States,* 289 F. 2d 894, 895–897 (Ct. App. D. C.). Compare *People* v. *Macias,* 180 Cal. App. 2d 193, 197.

The evidence was all inadmissible. The motion to suppress should have been granted.

<div align="right">

*Exceptions sustained.*
*Judgment reversed.*
*Judgment for the defendant.*